IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADDIE BUSH LONG, et al.,

    Plaintiffs,

    v.

BIG BLUE HEALTHCARE, INC., doing business as RIVERBEND POST-ACUTE REHABILITATION, et al.,

    Defendants.

Case No. 2:20-cv-2263-HLT-JPO

## MEMORANDUM AND ORDER[1]

Plaintiffs Addie Bush Long and Latrice Newman are the surviving relatives of Okey Long, who was a resident at a care facility, where he contracted and died of COVID-19. Plaintiffs filed this wrongful-death action against Defendants—the owners and operators of the care facility—alleging that they were negligent in failing to protect against COVID-19 infections. Defendants removed this case from state court where it was initially filed, arguing that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d ("PREP Act") provides for "complete preemption" and presents a federal question, which would give this Court jurisdiction. In turn, Plaintiffs move for remand, arguing that the allegations arise solely under state law and the PREP Act does not apply.

---

[1] This case is one of twelve related cases pending before this Court stemming from COVID-19 deaths at Riverbend Post-Acute Rehabilitation. Each of the twelve cases was removed from state court by Defendants, who then moved to dismiss. All Plaintiffs—relatives of those who died—have sought remand. Briefing on the motions to dismiss was stayed pending resolution of the motions for remand. The complaints, although varying slightly, all generally charge that Defendants' negligence caused the deaths of the decedents. The motions and briefs are likewise substantively identical in each case and neither side raises any distinctions among the cases. The named defendants in each case are some combination of Big Blue Healthcare, Inc.; Little Blue Health Holdings, LLC; Ryan Leiker; The Ensign Group, Inc.; The Ensign Facility Services, Inc.; Golden Oaks Healthcare, Inc.; and Gateway Healthcare, Inc. Certain Defendants are named in each case, and others are only named in some. For purposes of this order, the Court refers to these Defendants collectively while acknowledging that their interests might not be aligned beyond this order.

The Court agrees that the PREP Act's provisions regarding the administration or use of covered countermeasures are not applicable to the allegations in this case, which allege negligence stemming from a failure to follow certain policies, procedures, and guidelines regarding COVID-19. Accordingly, this Court lacks subject-matter jurisdiction and remands this case to state court.

## I. BACKGROUND

Plaintiffs, who are the surviving relatives of Okey Long, filed this lawsuit in the Wyandotte County District Court in Wyandotte County, Kansas. The petition alleges that Long was a resident at Riverbend Post-Acute Rehabilitation, where he was exposed to and contracted COVID-19, and which caused his death. Plaintiffs sue Defendants for wrongful death.

The petition alleges that Long was admitted to Riverbend in 2020 because he was incapable of caring for himself. By March 13, 2020, Plaintiffs allege Riverbend knew of the risks associated with COVID-19 and the importance of preventing its spread throughout the facility. However, in late March, a Riverbend staff member began showing symptoms of COVID-19 and was allowed to work while the staff member had a cough or fever, and without using personal protective equipment. The staff member was tested on March 29, and the results came back positive for COVID-19 on March 30. Despite this, Riverbend residents were still allowed to congregate in common areas after March 29.

By April 3, seventeen residents and two staff members at Riverbend had tested positive. Long was diagnosed as COVID-19 positive on April 6 and died from COVID-19 on April 17. Plaintiffs claim that Defendants breached their duty of care and were negligent and careless by failing to:

- follow proper infection control protocols and guidelines;
- ensure workers were not working with COVID-19 symptoms;
- provide personal protective equipment to staff;
- separate those with symptoms from those without;

- adhere to social-distancing guidelines;
- respond to the presence of COVID-19 in the facility;
- timely request additional staff and assistance from public health entities;
- protect, supervise, and provide 24-hour care to Long;
- properly supervise and train staff;
- follow standing orders, instructions, and protocol regarding COVID-19; and
- provide adequate interventions.

Plaintiffs allege that this negligence by Defendants caused Long's death.

Defendants removed the case to federal court. Removal is based on federal-question jurisdiction.[2] Defendants contend that, under the PREP Act, the claims in this case are completely preempted, which gives this Court subject-matter jurisdiction. Shortly after removal, Plaintiffs filed a motion to remand this case back to state court.

## II.  STANDARD

Under 28 U.S.C. § 1447(c), a district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Federal courts are courts of limited jurisdiction, so the presumption is one of no jurisdiction until an adequate showing of jurisdiction is made. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). When a party removes a case to federal court, the burden is on that party to establish that federal jurisdiction exists. *Id.*; *Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1189 (D. Kan. 2017). "Doubtful cases must be resolved in favor of remand." *Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999).

---

[2]  Diversity jurisdiction is not alleged.

3

**III.   ANALYSIS**

   **A.   Defendants' motion for leave to file a surreply is granted.**

After this matter was fully briefed, Defendants filed a motion for leave to file a surreply.[3] Defendants contend that a surreply is necessary to respond to arguments raised for the first time in Plaintiffs' reply. Plaintiffs oppose Defendants' motion.

Surreplies are not permitted without leave of court. *See Patterson v. Lansing*, 2001 WL 946181, at *2 (D. Kan. 2001). The Court notes that the parties' briefing regarding the surreply was unnecessarily adversarial. And although the Court is somewhat dubious that Defendants have justified the filing of a surreply or directed their surreply exclusively at arguments they contend were "new" in Plaintiffs' reply brief, the Court does note generally that Plaintiffs' motion for remand was based solely on the well-pleaded-complaint rule and did not address the doctrine of complete preemption. Accordingly, given the issues at stake and the procedural posture of the case, the Court will permit Defendants' proposed surreply. It has been considered in deciding the motion to remand.

   **B.   For purposes of federal-question jurisdiction, the general rule is that a complaint dictates whether state or federal law is invoked.**

As noted above, Defendants removed this case to federal court citing federal-question jurisdiction. In this case, it is generally undisputed that Plaintiffs' complaint does not—on its face—assert a federal claim. Plaintiffs allege negligence under Kansas law. In the absence of diversity, federal courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. Whether a claim "arises under" federal law

---

[3] Defendants also filed motions for a hearing in each case. Defendants request a hearing because the motion to remand raises unique questions of law and the reply presents new arguments. The Court denies this request. As stated above, the Court will permit the filing of Defendants' surreply. Given the parties' extensive briefing, the Court finds that oral argument is not necessary.

4

generally turns on the "well-pleaded" allegations of the complaint. *Dutcher*, 733 F.3d at 985; *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). Federal-question jurisdiction exists only if the plaintiff's claims are based on federal law. *Devon Energy Prod.*, 693 F.3d at 1202. By omitting federal-law claims from a complaint, a plaintiff can effectively avoid removal. *Id.* Potential affirmative defenses are not considered, including defenses based on preemption. *Id.*; *Christensen*, 242 F. Supp. 3d at 1190.

Here, Plaintiffs have alleged negligence under state law. Under the well-pleaded complaint rule, then, there is no federal-question jurisdiction.

### C. Remand is appropriate unless the doctrine of complete preemption justifies removal.

Defendants argue that an exception or corollary to the well-pleaded complaint rule applies: the doctrine of complete preemption. *See Devon Energy Prod.*, 693 F.3d at 1204. "Complete preemption is a rare doctrine" that has only been recognized in a handful of areas. *Id.* at 1204-05 (quoting *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011)). It is not to be lightly invoked. *Devon Energy Prod.*, 693 F.3d at 1205; *Connolly v. Union Pac. R.R. Co.*, 453 F. Supp. 2d 1104, 1109 (E.D. Mo. 2006) ("Courts have cautioned against an expansive application of the exception . . . ."). Complete preemption is not so much a statement of the breadth of a statute's preemptive power, "but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Devon Energy Prod.*, 693 F.3d at 1205 (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996)).

Importantly, "complete preemption" is not the same thing as "ordinary preemption." *See Dutcher*, 733 F.3d at 986. Complete preemption is a jurisdictional concept, while ordinary preemption is a defense to liability. *See Devon Energy Prod.*, 693 F.3d at 1203 n.4; *Christensen*,

242 F. Supp. 3d at 1190; *see also Schmeling*, 97 F.3d at 1342. Ordinary preemption, which can take the form of express, conflict, or field preemption, is generally an affirmative defense that state law has in some way been displaced by federal law. *Devon Energy Prod.*, 693 F.3d at 1203 n.4. But an ordinary-preemption <u>defense</u> does not make a complaint removable to federal court. *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011).

By contrast, complete preemption is said to make what is ostensibly "a state-law claim purely a creature of federal law, and thus removable from state to federal court from the outset." *Id.* (internal quotations and citations omitted). The distinction is important. "That is, a state cause of action may not be viable because it is preempted by a federal law—but only if federal law provides its own cause of action does the case raise a federal question that can be heard in federal court." *Dutcher*, 733 F.3d at 986; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987); *Harris v. Pacificare Life & Health Ins. Co.*, 514 F. Supp. 2d 1280, 1290 (M.D. Ala. 2007) ("[A] federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption." (quoting *Geddes v. Am. Airlines, Inc.*, 321 F.3d. 1349, 1353 (11th Cir. 2003))).

In determining whether to apply the doctrine of complete preemption, the Court asks two questions. Does a federal provision preempt the state law relied on by the plaintiff? And has Congress created an exclusive federal cause of action meant to displace all state claims, such that the claim is removable. *Devon Energy Prod.*, 693 F.3d at 1205; *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003) (stating that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable").

Importantly, and perhaps obviously, the claims at issue must fall within the scope of the relevant federal statute for complete preemption to apply. *See Beneficial Nat. Bank*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, <u>a claim which comes within the scope of that cause of action</u>, even if pleaded in terms of state law, is in reality based on federal law." (emphasis added)). Accordingly, to avoid remand, Defendants must first show that Plaintiffs' allegations fall within the scope of the PREP Act.

### 1. The PREP Act applies to the administration or use of covered countermeasures.

The parties disagree on the scope of the PREP Act and whether it applies here. In determining whether a statute applies, the first step is to look at its "plain and unambiguous meaning." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the language is unambiguous, the analysis stops. *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

The PREP Act is invoked when the Secretary of the Department of Health and Human Services ("HHS") issues a declaration determining—for purposes of the PREP Act—that a disease or other health condition constitutes a public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that such conditions exist, he or she "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.* The Secretary has issued such a declaration regarding the COVID-19 pandemic. *See* Declaration Under the

7

Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 10, 2020) ("Declaration").[4]

Once the Secretary has issued a declaration, the PREP Act provides sweeping immunity for certain claims against certain covered individuals: "a covered person[5] shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1). This immunity is broad. It

> <u>applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure</u>, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

*Id.* at § 247d-6d(a)(2)(B) (emphasis added).

A "covered countermeasure" under the PREP Act is, simplified, a drug, biological product, or device that is a "qualified pandemic or epidemic product"[6] or a "security countermeasure,"[7] or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act. *Id.* at § 247d-6d(i)(1). It also includes a "respiratory protective device that is approved by the National Institute for Occupational Safety and Health." *Id.* The COVID-19 Declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other

---

[4] The Declaration has been amended at least twice. *See* 85 Fed. Reg. 21,012 (Apr. 10, 2020); 85 Fed. Reg. 35,100 (June 4, 2020).

[5] Who constitutes a covered person is further defined in the PREP Act, and certain additional requirements may apply based on the type of "covered person" at issue. *See, e.g.*, 42 U.S.C. § 247d-6d(a)(3)(C), (i)(2). Here, however, the parties don't meaningfully dispute that Defendants are covered persons, nor do they argue that the analysis turns on any distinction based on that definition.

[6] A "qualified pandemic or epidemic product" is defined at 42 U.S.C. § 247d-6d(i)(7).

[7] A "security countermeasure" is defined at 42 U.S.C. § 247d-6b(c)(1)(B).

device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration, 85 Fed. Reg. at 15,202.

"Administration" and "use" are not defined in the PREP Act itself. But the Secretary's Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id.*

There are two exceptions to the PREP Act's immunity provision. The PREP Act permits "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . ." 42 U.S.C. § 247d-6d(d)(1). Such actions must "be filed and maintained only in the United States District Court for the District of Columbia." *Id.* at § 247d-6d(e)(1).[8] For injuries not involving willful misconduct, the PREP Act establishes a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." 42 U.S.C. § 247d-6e(a). That fund is funded by Congressional appropriation. *Id.* No federal or state court has jurisdiction to review award decisions by the fund. *Id.* at § 247d-6e(b)(5)(C).

The PREP Act preempts state laws that create different standards regarding covered countermeasures:

---

[8] Additional substantive and procedural requirements govern willful-misconduct claims. 42 U.S.C. § 247d-6d(c), (e).

9

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8).

In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices. Exceptions to immunity exist for claims of willful misconduct but suit must be brought in the United States District Court for the District of Columbia. All other claims for injuries "directly caused by the administration or use of a covered countermeasure" must be pursued through the Covered Countermeasure Process Fund. State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

### 2. Plaintiffs' claim of loss is not causally connected or related to the administration or use of covered countermeasures.

As explained above, the first step in determining whether this Court has jurisdiction is determining whether Plaintiffs' allegations fall within the purview of the PREP Act. Because Defendants are advocating for federal jurisdiction, it is their burden to show that, first, the PREP Act applies to Plaintiffs' allegations, and second, that complete preemption would apply to the

10

PREP Act. *See Dutcher*, 733 F.3d at 985-86. The Court finds that Defendants have failed to carry their burden on the first issue; accordingly, it need not address the second issue.

Plaintiffs' complaint is admittedly broadly written, as most complaints are. But drilled down, Plaintiffs allege that the decedent died of COVID-19 because Defendants <u>failed</u> to take preventative measures to stop the entry and spread of COVID-19 within the facility. Plaintiffs contend that Defendants' failure to take those precautions led to the decedent contracting and dying of COVID-19. But nowhere in the complaint do Plaintiffs suggest that the decedent's death was causally connected to the administration or use of any drug, biological product, or device (i.e. a covered countermeasures). The claim seems to be precisely the opposite: that inaction rather than action caused the death.

There is very limited caselaw on the applicability of the PREP Act. Very recently, the District of New Jersey remanded a similar group of cases to state court. Like here, those cases involved allegations that residents at a care facility contracted COVID-19 because of the defendants' failure to exercise due care. The allegations included the failure to observe a variety of safety and infection-prevention protocols. *Estate of Maglioli, et al. v. Andover Subacute Rehabilitation Ctr.*, 2020 WL 4671091, at *1-*2 (D.N.J. 2020). The plaintiffs sued in state court for negligence, and the defendants removed the case to federal court. *Id.* The court, on the plaintiffs' motions to remand, compared the allegations to the PREP Act and found the PREP Act inapplicable. *Id.* at *9-*10. Specifically, the court concluded that a malpractice claim about countermeasures that were <u>not</u> used "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them." *Id.* at *9.

In an earlier case evaluating the PREP Act in the context of the H1N1 influenza pandemic, a New York state court likewise concluded that the PREP Act does not apply to inaction. In

11

*Casabianca v. Mount Sinai Medical Center*, the decedent had been hospitalized for a medical procedure but was not given the H1N1 influenza vaccine. He was later exposed to H1N1 and died. His family sued the hospital for medical malpractice and wrongful death. *Casabianca v. Mount Sinai Med. Ctr.*, 2014 WL 10413521, at *1 (N.Y. Sup. 2014).[9] The defendants sought protection under the PREP Act. The court noted that immunity under the PREP Act is limited to claims "resulting from the administration . . . or use" of a covered countermeasure, and that non-administration is not addressed, noting that "[n]othing is spoken of regarding a decision not to use the vaccine or of a failure to use it." *Id.* at *3-*4.

*Parker v. St. Lawrence County Public Health Department* involved the administration of a vaccine to a child without parental consent. *Parker v. St. Lawrence Cty. Pub. Health Dept.*, 102 A.D.3d 140, 141 (N.Y. App. Div. 2012). The court applied the PREP Act and conclude the plaintiff's claim was preempted. *Id.* at 143-44.[10] Defendants argue that *Parker* necessarily involved a claim of inaction because it centered on the failure to obtain consent before a vaccine was administered. But in *Parker*, it was undisputed that the vaccine was <u>administered</u> to the child. There was no question that the claim of loss—administration of a vaccine without consent—was "caused by, [arose] out of, relat[ed] to, or result[ed] from the administration to . . . an individual of a covered countermeasure." *See id.* at 143; *see also* 42 U.S.C. § 247d-6d(a)(1). The same cannot be said here.[11] Read together, *Maglioli*, *Casabianca*, and *Parker* support the conclusion that the PREP Act applies to action, not inaction.

---

[9]   The *Casabianca* decision appears to be a trial order or slip opinion. The Westlaw cite is used for ease of reference.

[10]  The Court notes that the question in *Parker* was whether the PREP Act preempted (as in, provided a defense to) the type of state-law claims asserted, not whether the PREP Act covers inaction. Compete preemption (as a jurisdictional rule) was not at issue.

[11]  Defendants argue that the declarations at issue in *Casabianca* and *Parker* addressed the administration of the H1N1 influenza vaccine and were narrower than the declaration for the COVID-19 pandemic. While that may be true, it

Defendants generally argue that Plaintiffs' allegations fall within the scope of the PREP Act. But in doing so, they generally just re-write Plaintiffs' allegations using the language of the PREP Act—language never actually used in Plaintiffs' complaint. They also argue that allegations that the facility <u>failed</u> to provide <u>adequate</u> protections invokes all devices and other interventions that the facility <u>did</u> use.[12] But the complaint says almost nothing about any interventions—drugs, devices, etc.—that were used, and there are no allegations that the administration or use of any of those things <u>caused</u> the death of the decedent. Again, the allegations are the opposite—that Defendants' <u>failure to act</u> caused the decedent's death. To the extent Defendants want to argue that the PREP Act applies, they must do so based on the complaint as it is—not as Defendants would prefer it to be. *Caterpillar*, 482 U.S. at 396-97 (noting that a defendant cannot ignore the allegations in the complaint and argue "that there are different facts [a plaintiff] might have alleged that would have constituted a federal claim" so that it can "justify removal on the basis of facts not alleged in the complaint").

Defendants also argue that Plaintiffs interpret the PREP Act too narrowly in several ways. First, they argue that the PREP Act does not only apply to injuries "caused" by the administration or use of a covered countermeasure, but also to injuries "arising out of, relating to, or resulting from" their administration or use. *See* 42 U.S.C. § 247d-6d(a)(1). That is a correct statement of the PREP Act. But Defendants fail to meaningfully connect this to any allegation in Plaintiffs' complaint. Again, Plaintiffs' case is premised on inaction. There is no clear allegation that any

---

does not change the fact that Plaintiffs' allegations are not based on the administration or use of any countermeasures, even as defined under the COVID-19 declaration.

[12] Defendants' brief lists various countermeasures they contend were used in the facility. But none of that is factually supported. Even it if was, the complaint is what governs at this stage.

13

injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same.

Second, Defendants argue that "administration or use" is not only defined as the "physical provision" of countermeasures. Defendants are correct that "administration" also covers "activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients" and the "management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." Declaration, 85 Fed. Reg. at 15,202. Relying on this definition, Defendant claims that Plaintiffs' allegations are "inextricably intertwined" with Defendants' management and operation of its facility, which must have involved the use of covered countermeasures. But Defendants' parsing of Plaintiffs' allegations on this point is not persuasive.[13] Suffice it to say that the Court is not convinced that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility. The PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures, and that link is not present under Defendants' interpretation.[14]

---

[13]  For example, Plaintiffs allege that Defendants should have known the importance of monitoring staff and residents for COVID-19. Defendants argue this somehow invokes the use of thermometers and pulse oximeters. But the use of thermometers or pulse oximeters—even assuming those are covered countermeasures—are not factual allegations in this case, and Defendants cannot establish applicability of the PREP Act by merely assuming those facts into existence. Regarding Plaintiffs' allegation that Defendants failed to provide staff with "proper" personal protective equipment ("PPE") or provide "adequate" interventions, Defendants contend this could apply to both <u>nonuse</u> of these things, but also inadequate or ineffective <u>use</u>. The Court disagrees that these vague statements clearly assert a claim based on the use or administration of covered countermeasures. Further, although certain statements in the complaint do suggest that some covered countermeasures were used, like diagnostic tests, Plaintiffs do not tie the claim of loss to the administration or use of those tests. In other words, while the decedent was tested for COVID-19, no deaths are alleged to be causally related to the administration or use of that test.

[14]  The Declaration supports this conclusion. In discussing the definition of "administration," it clarifies that "a liability claim alleging an injury occurring at the site that was not directly related to the countermeasure activities is not covered, such as a slip and fall with no direct connection to the countermeasure's administration or use. In each case, whether immunity is applicable will depend on the particular facts and circumstances." Declaration, 85 Fed. Reg. at 15,200.

14

Third Defendants argue that the immunity provision of the PREP Act covers "the administration to or use <u>by an individual</u> of a covered countermeasure," which means that it need not be the decedent who received the countermeasure, so long as there was administration of a countermeasure <u>to someone</u>. Again, Defendants correctly recite the language of the PREP Act but ignore the causation language. Plaintiffs' complaint does not allege that the administration or use of a countermeasure to someone else somehow caused the decedent's death.

Fourth, Defendants argue that Plaintiffs interpret the definition of "covered countermeasures" too narrowly, and that it extends beyond drugs to biological products, devices, and respiratory protective devices. Again, this is correct. *See* 42 U.S.C. § 247d-6d(i)(1). But again, Defendants fail to point to any claim in the complaint where Plaintiffs allege that the administration or use of <u>any</u> of these things caused the decedent's death.

Fifth, Defendants argue that Plaintiffs' interpretation of the PREP Act does not comport with Congress's intent to provide broad immunity. But Congress's intent to provide broad immunity for the claims covered by the PREP Act does not mean that the PREP Act covers the claims here. Indeed, if Congress intended the PREP Act to apply as broadly as Defendants advocate, it certainly could have written it to clearly apply to inaction as much as action. Instead, the PREP Act addresses the administration or use of covered countermeasures. There is simply no room to read it as equally applicable to the <u>non</u>-administration or <u>non</u>-use of covered countermeasures. *See Estate of Maglioli*, 2020 WL 4671091, at *9 (finding that "the PREP Act . . . is designed to protect those who employ countermeasures, not those who decline to employ them").

15

Accordingly, the Court finds the PREP Act inapplicable.[15] Because the PREP Act does not apply, it cannot be used to establish federal question jurisdiction under the doctrine of complete preemption. Remand is appropriate.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiffs' Motion for Remand (Doc. 22) is GRANTED. This case is REMANDED to the District Court of Wyandotte County, Kansas. The Court directs the Clerk of Court to take all necessary steps to effectuate this remand.

THE COURT FURTHER ORDERS that Defendants' Motion for Leave to File a Surreply (Doc. 37) is GRANTED. The surreply (Doc. 37-1) is deemed filed and has been considered by the Court in this order.

THE COURT FURTHER ORDERS that Defendants' Motion for Hearing (Doc. 38) is DENIED.

IT IS SO ORDERED.

Dated: August 19, 2020                         /s/  *Holly L. Teeter*
                                               HOLLY L. TEETER
                                               UNITED STATES DISTRICT JUDGE

---

[15] Defendants contend that, if the Court accepts Plaintiffs' argument that the PREP Act does not apply, Plaintiffs should be judicially estopped from arguing in the future any theory of liability that involves the use of covered countermeasures. The Court declines to make any ruling on this issue. The dispute currently before the Court is whether it has subject-matter jurisdiction over Plaintiffs' case, as it is currently pleaded, based on the applicability of the PREP Act. To the extent Plaintiffs' claims evolve, the applicability of the PREP Act could certainly be revisited.